No. 08-0914

IN RE TEXAS WINDSTORM INSURANCE ASSOCIATION HURRICANES RITA AND HUMBERTO LITIGATION

ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL

PRESIDING JUDGE PEEPLES delivered the opinion of the MDL panel.

Texas Windstorm Insurance Association seeks appointment of a pretrial judge for forty-two cases involving hurricane insurance claims in Jefferson, Galveston, and Travis Counties.[1] Thirty-eight cases arise from Hurricane Rita and four from Hurricane Humberto. For the reasons stated below we grant the motion. A pretrial judge has been appointed by separate order.

Rule 13 authorizes us to transfer "related" cases from different trial courts to a single pretrial judge "if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation." *See In re Ad Valorem Tax Litigation,* 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006); TEX. R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l*). In *In re Delta Insurance Company, et al.,* Nos. 08-142, 08-2028, & 08-0427 (Tex. M.D.L. Panel, Sept. 5, 2008), we transferred to a pretrial judge similar Hurricane Rita insurance cases against different insurers. We concluded that the cases were related within the meaning of Rule 13 because the insurers faced substantially the same extra-contractual claims and discovery requests in every case.

Like Texas Windstorm, those insurers did not face mere case-specific contract claims that they failed to pay for damages covered under each insurance policy. Instead, like Texas

---

[1] Texas Windstorm's motion covers forty-two of the 11,000 insurance claims against it arising from Hurricane Rita. Thirty-nine cases have been filed in Jefferson County, two in Galveston, and one in Travis.

Windstorm they faced claims that they had designed and pursued a standard business practice of handling these claims in a way that minimized payments to their insureds. That allegation was the foundation for extra-contractual damage claims and for discovery requests seeking information about the training of adjusters; claims handling procedures, instructions, and guidelines; the handling of other claims, including reports submitted by adjusters in other cases; complaints and lawsuits by other insureds; personnel files; and net worth.[2]

We are told that there are no common issues in these cases,[3] but it is difficult to envision how the insurers could give anything other than identical responses to common discovery requests like those mentioned, which are not case-specific. We see no genuine difference between these cases and those before the panel in *Delta*, where we analyzed Rule 13's impact in this situation. Also instructive is our discussion in *In re Ocwen Loan Servicing, LLC*, No. 07-0037 (Tex. M.D.L. Panel, Mar. 26, 2007). There the plaintiffs alleged that the defendant, pursuant to standard practices, had unlawfully charged them fees, serviced their accounts, and foreclosed on their homes. We said:

> The claims in each of the nine pending cases are based on standard practices and procedures followed by Ocwen in its business of servicing mortgage loans. Accordingly, in all nine cases, discovery will be aimed at disclosing the nature of these common practices and procedures. In addition, similar legal issues will arise as to whether those standard practices and procedures give rise to liability under the commonly alleged theories. . . .
>
> . . . Rule 13 is concerned [about] conflicting demands or repetitive discovery which would inconvenience both the witnesses and the parties. . . . A transfer will

---

[2] Though not every lawsuit seeks precisely the same discovery, two-thirds of them seek the discovery summarized in the text; and all of them plead extra-contractual causes of action and seek some discovery concerning those claims.

[3] The response filed by the largest group of plaintiffs says, "There are no common witnesses whose testimony could be given in common for all the cases. There are no common factual disputes about which a pretrial MDL judge could rule once for all the cases." Another response states, "TWIA has failed to demonstrate that there is one common question of fact between the forty-two cases it seeks to transfer."

2

> ensure that [common] issues are decided the same way. As contested issues arise, the pretrial judge will be able to make consistent rulings.

*Id.* at 4. We reaffirm our holding in *Delta* that the extra-contractual issues make these cases related within the meaning of Rule 13. We turn now to two other arguments.

**1. Relatedness—differences among the cases.**

Several plaintiffs argue that the forty-two cases are different from each other in important ways and therefore are not related. The first difference is that thirty-four cases involve residential dwelling policies, while eight involve commercial policies. The policies, however, provide the same coverage for the same risks. And the extra-contractual claims are the same, as are the discovery requests related to those claims. The second difference is that four of the cases involve Hurricane Humberto, which occurred after Rita. We consider those cases related to the Rita cases because they involve precisely the same extra-contractual claims and discovery, and because they will involve inquiry into the existence and extent of pre-existing damage from Rita. It is worth noting that when plaintiffs pleaded their extra-contractual causes of action and sought extra-contractual discovery, they did not make distinctions based on the kind of policy or coverage or the hurricane involved. Because of the extra-contractual claims, the cases are related within the meaning of Rule 13, even though some of them involve a different policy and a later hurricane in the same area.

One response says that the cases fall into "forty-two separate and distinct fact patterns." As we have said before, every individual case is different, but for MDL purposes Rule 13 mandates transfer to a pretrial court when the cases are related and handling by one pretrial court

will promote Rule 13's goals of convenience, efficiency, and justice.[4] If the "separate and distinct fact patterns" assertion means that each of these cases is unrelated to the others, we respectfully disagree because each case arises from hurricane damage, involves the same insurance coverage, and involves the same or similar extra-contractual claims and discovery discussed above.

The fact patterns of these cases are no more separate and distinct than those of other cases in which MDL motions have been granted. *See, e.g., Union Carbide v. Adams,* No. 03-0985 (Tex. M.D.L. Panel, Dec. 30, 2003) (transferring asbestos cases to pretrial judge); *In re Silica Products Liability Litigation,* 166 S.W.3d 3 (Tex. M.D.L. Panel 2004); *In re Vioxx Litigation,* No. 05-0436 (Tex. M.D.L. Panel, Aug. 25, 2005); *In re Ford Motor Company Speed Control Deactivation Switch Litigation*, No. 07-0953 (Tex. M.D.L. Panel, Feb. 19, 2008). The question is not whether the cases are different. They are. Each of these earlier cases will involve different causation and damages facts. Indeed many of the silica and asbestos cases involve different *products* and different *defendants.* The question is whether they are related (involving one or more common questions of fact) and whether transfer to one pretrial judge will promote the convenience of the parties and witnesses and the efficient handling of the cases.

It is also argued that the cases are not related because no case will "turn" on the insurer's general adjusting practices but instead on how the insurer applied those adjusting practices in each individual case. That may be true, but the Rule 13 decision does not rest on our estimate of

---

[4] In *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006), we stated our view that individual cases always differ from each other, but this by itself cannot defeat an MDL motion:

> Plaintiffs argue that many of them are not similarly situated. . . . There may indeed be differences. But every case is different. No two cases are alike. A rule 13 transfer of cases does not require that the cases be congruent or anything close to it. It requires only that cases be "related"—i.e. that they involve one or more common questions of fact— and that transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

4

what will be the major focus in a case.  Transfer may be proper "even though in a given case the common issues might not outweigh the individual case-specific issues."  *In re Silica Products Liability Litigation,* 166 S.W.3d at 6.  Undoubtedly cases that go to trial will focus on the facts of the particular case being tried.   But the Rule 13 inquiry is whether cases have one or more questions of fact in common.  If we were expected to weigh the importance of the various issues to the litigants, the lawyers might have to predict and disclose their trial strategy to us.  Rule 13 does not contemplate such weighing of issues and their importance.  Plaintiffs point out that in *In re Ad Valorem Tax Litigation*, we stressed the local nature of the disputes and said that the local issues predominated over the common ones.  But when that statement is considered in context[5] it is apparent that we were not balancing the importance of issues when we decided the issue of relatedness.

We respectfully reject these arguments that the forty-two cases are so different from each other that they are not related.

---

[5] The pertinent discussion in the *Ad Valorem Tax* case is as follows:

Concerning the similarity, or commonness, of the properties in these forty-two different counties, we cannot accept the suggestion that the real property and improvements are necessarily similar to each other even though they are situated in different counties or even in different areas of the same county. It is no doubt true that the inventory at some convenience stores, in contrast to the realty, may have a somewhat uniform value in different parts of the state, but we think that does not convert these cases into related cases.  The valuation of property, certainly the major kinds of property at issue here, is an inherently individualized and local process.  Valero admits this, as it must, when it says "the determination of each individual Property's appraised value ultimately will turn on the characteristics specific to that Property."  . . .  Valero has simply not shown how the appraisal of different properties in different parts of Texas will involve common questions of fact.  Indeed, the individualized fact inquiries in these appraisal cases *preponderate over whatever common issues there may be.*  Because property valuation is such an individualized and local inquiry, and because it is the core issue in each of these cases, we respectfully reject the argument that these cases involve one or more common fact questions within the meaning of rule 13.

216 S.W.3d at 85 (emphasis added).

**2. Convenience and efficiency—completed discovery and trial settings.**

Plaintiffs argue that transfer to a pretrial judge would not serve the interests of convenience or efficiency. In four cases the plaintiffs oppose the MDL motion because discovery in their cases is substantially complete and the cases are set for trial in early 2009. This argument rests on the assumption that completion of discovery and the existence of a trial setting will immunize a case from MDL procedures.[6] That assumption is erroneous because Rule 13 contemplates that the pretrial judge will be involved in the details of trial settings. When discovery is complete and an MDL case is ready for trial, Rule 13 does not allow the pretrial judge to simply return the case to the trial court without consultation or further instructions. On the contrary, when remanding a case the pretrial judge is instructed to: (1) consult with the trial judge about the trial setting, (2) consider the convenience of the parties and witnesses in *the remanded case*, and (3) consider the efficient handling of *the cases remaining in the MDL proceeding*. *See* TEX. R. JUD. ADMIN. Rule 13.6 (d). A remanded case is not to be given an ordinary trial setting; when a trial date is set and a case remanded, the trial judge cannot continue or reset the case without the pretrial judge's consent.[7]

Pretrial judges are granted continuing authority over remanded cases for the plain reason that continuances, resettings, and further discovery after remand could interfere with the pretrial judge's management of the remaining MDL cases.[8] Rule 13 therefore limits the trial judge's

---

[6] Plaintiffs mention that when we denied an MDL motion in *In re Vanderbilt Mortgage and Finance, Inc.*, 166 S.W.3d 12 (Tex. M.D.L. Panel 2005), we stressed that two of the six cases were essentially discovered and set for trial. But readiness for trial was only one factor among many in that case; we denied the *Vanderbilt* motion because we were not persuaded that assigning the cases to one pretrial judge would promote convenience or efficiency, as the last paragraph in that opinion makes clear. *Id.* at 15.

[7] "The trial court must not continue or postpone a trial setting without the concurrence of the pretrial court." See TEX. R. JUD. ADMIN. Rule 13.6 (d).

[8] "The trial court should recognize that to alter a pretrial court order without a compelling justification would frustrate the purpose of consolidated and coordinated pretrial proceedings." See TEX. R. JUD. ADMIN. Rule 13.8 (a).

power to make rulings in remanded cases that might interfere with the remaining MDL cases. Thus the pretrial judge, being responsible for the efficient handling of the entire group of MDL cases, might want to ensure that each trial setting is a realistic one, that it is first on the docket and not merely one among many cases competing for attention.[9]

For all these reasons the pretrial court's control over trial settings is an important feature of Rule 13's MDL system. We conclude that the pretrial judge should be given the opportunity to exercise his discretion in deciding the conditions to impose on the cases when they are remanded for trial.

*   *   *   *   *

These Texas Windstorm cases have not been convincingly distinguished from those we considered in *Delta,* where we applied Rule 13 to similar hurricane insurance coverage cases. The cases before us are related and, for the reasons that we explained in *Delta* and need not repeat here, it would promote convenience and efficiency to have one judge make pretrial rulings on common claims and defenses, coverage issues, and scope of discovery. The motion to transfer is granted.

JUSTICES LANG, HANKS, STONE, and MCCLURE concur.

---

[9] While we have no information about the handling of dockets by the courts whose cases are before us, we have previously emphasized in general terms that the MDL system should be aware of docket realities when cases are set for trial:

> Nor can we ignore what we as judges know from experience—that sometimes it can be difficult for dedicated but busy trial judges to give cases like these the deliberate, thoughtful, and focused pretrial attention they deserve. It is also difficult to give them realistic trial settings, and trial judges may be tempted to set cases for trial on dates before they will be truly ready, knowing that many cases will settle under the pressure of a trial setting. . . .

*In re Silica Products Liability Litigation*, 166 S.W.3d at 6.

_____
David Peeples, Presiding Judge


**OPINION DELIVERED:**  January 27, 2009